May it please the Court, my name is Clark Holland. I'm appearing on behalf of Andrew Hernandez. I'd like to reserve a couple of minutes for the panel. You are correct, Your Honor. I thought the law student did an excellent job summarizing the law regarding cruel and unusual punishment, so I will not bore the Court with that, with another rendition. I would like to focus on Andrew Hernandez specifically and distinguish Mr. Hernandez's case from cases like Ramirez and Ewing and even Andrade, and more importantly, discuss with the Court, fortunately for me, a superb discussion of the issues by Judge Latz in his recent case of Banyard v. Duncan. The Banyard v. Duncan case, which we submitted last week, is especially applicable because Judge Latz analyzed the case involving a third strike of possession of cocaine of less than a gram. That is exactly the crime that Mr. Hernandez committed. Andrew Hernandez is 32 years old now. He will spend the rest of his life in prison because he fell asleep on a sidewalk with a crack pipe in his sock. I do not defend this as an upstanding citizen conduct. I do believe the Court has to appreciate the fact that in the environment in which Mr. Hernandez lives, in the circumstances that he has, this is not a crime that threatens other people. In the way, for instance, a DUI slamming into cars down the freeway may threaten people. Falling asleep on a sidewalk with a crack pipe does not really threaten anyone. It is virtually identical to the circumstances of Banyard where Judge Latz ordered a resentencing. In fact, what is interesting about Banyard is that after the resentencing was ordered and Mr. Banyard was sentenced to six years, which was double the midterm of three because of his prior strike, he was let out of jail for credit for time served. The District Attorney of Los Angeles did not appeal that case. And in a discussion after the case of the circumstances, the District Attorney of Los Angeles ironically said that today people arrested for possession of that amount of cocaine would never be charged with a third strike case under the current circumstances in L.A. County. So when you talk about proportionality, if Mr. Hernandez had fallen asleep yesterday in the streets of Los Angeles, he wouldn't be spending the rest of his life in jail. Help me understand why you're saying that he fell asleep with a crack pipe in his pocket when the officer's testimony is that they arrested him for having dropped a piece of paper, and then upon questioning him, they spot the thing coming out of his pocket. He then shows them the crack pipe that he has in his shoe or in his pocket, and they find the three rocks of cocaine. As you recall, Your Honor, there was quite a bit of dispute about the circumstances under which Mr. Hernandez was arrested, which was part of the briefed issues regarding the issue of the ambulance and the misstatements by the District Attorney regarding which ambulance showed up. And what color it was and so on. Right. Mr. Hernandez has a vastly different view of the circumstances of his arrest. Even accepting the police's version, instead of falling asleep on the sidewalk, he was standing on the sidewalk. Nonetheless, he was … And having committed the crime that drew their attention of dropping a piece of paper. The heinous crime of dropping a piece of paper. Again, this is not about whether or not Mr. Hernandez is a troubled person. In fact, what's interesting is, again, today, Mr. Hernandez would not be spending the rest of his life in jail. May I have a question here that's been bothering me since we started up, since you started, sir? The certificate of appealability in this case that exits the record 28 and 29 does not include any issue regarding the Eighth Amendment or disproportionality. It includes two things. One, whether habeas relief is warranted with respect to Petitioner's claim that a prosecutor committed a misconduct during closing argument regarding facts not in evidence. And second, whether habeas relief is warranted with respect to Petitioner's claim that he received ineffective assistance of counsel. Now, if that is those two questions that have been certified for appeal, what is the basis of your arguing the Eighth Amendment? Your Honor, the basis is this court's Rule 22.1e regarding the briefing of uncertified issues. I believe this court in many cases has specifically, and you have a local rule on it, allows the briefing of uncertified issues, which effectively means that you consider that. I'm not suggesting to you that this issue was certified by the district court. It was not. We followed the local rule of denoting the uncertified issue in our brief regarding the issue of cruel and unusual punishment. I concede that absolutely. And in your view, then, under the rule, that serves as a request for certification? That's right. It is fundamentally a request for two things, that this court effectively certify this, that issue, and then, of course, reach it on the merits. Yeah. The distinctions I want to draw between Mr. Hernandez's case and other cases I think is important. The proportionality analysis that this court requires requires a consideration of what I call the target or triggering offense. In this case, possession of a controlled substance of less than a gram. Mr. Hernandez would serve somewhere between 16 months and 36 months for such a crime prior to Proposition 36. Of course, if he fell within the rule of Proposition 36, he would be granted immediate probation and drug treatment. In effect, Mr. Hernandez is unlucky because of timing and nothing else. He's not unlucky because his offense injured or threatened to injure anyone. He's simply unlucky because he possessed crack cocaine in 1999 instead of a week ago when his sentence would have been drastically less. And I think it is important in evaluating the cruel and unusual punishment issue that that comparative analysis is crucial. How are similarly treated people treated today or at any other time? Mr. Hernandez also, I think, was unfairly treated by both the trial court and the court of appeal. In the record, the court specifically noted that he was uneducated and had mental problems. In effect, this court is saying, not you, but the court of appeal and the trial court said, we're going to put Mr. Hernandez in prison for life because he had a bad education, because he has mental problems. This is not the purpose of the recidivist statutes in California. It is not to warehouse people who didn't get a good education under the school system. And yet, those were the factors that were specifically referenced by the trial court and, again, by the court of appeal as Mr. Hernandez's crimes. Again, these are not crimes. Now, did the trial judge, once the charge is brought and once the conviction brought back in the verdict by the jury, does the trial judge have discretion as to whether or not to sentence under three strikes? The trial judge, under those circumstances, then conducted what is called the Romero hearing. And the Romero hearing is the attempt by Mr. Hernandez to effectively strike a strike. And Mr. Hernandez at the trial court introduced evidence from his employer, for example, who came in and said, you know, he has a troubled life, but he always shows up and I'd hire him again. He had a couple of relatives come in and say he's had to grow up in a gang environment his whole life, and yet he isn't a member of a gang today. His parole officer, ironically, came in and testified at that Romero hearing. The trial court didn't consider those factors sufficiently. But this is a legal question to perhaps, to which I should already know the answer, but I don't. How much discretion does the trial judge then have, based upon what he or she learns at that Romero hearing, to sentence or not sentence under three strikes? Under those circumstances, the trial judge can then strike one of the prior strikes, which effectively, for that purpose, for that day, then would put Mr. Hernandez in what I call a two-strike context, which would then mean that the court would double the charge for the offense he was found guilty of. So, for example, if he had struck one of Mr. Hernandez's priors, then he would have looked at the cocaine possession. He would have said, okay, 16 months to three years doubled, whatever he decided. So Mr. Hernandez would have spent somewhere between three and five years in jail. Okay. One final question. In actually looking at the issues that were certified, I looked back to the record and I tried to find transcripts of the trial at which we had the testimony, but I couldn't find them. Were those transcripts ever typed up? Were they lodged in the district court? Yes. So I should be able to find those transcripts in the district court record? You should be able to. And the closing argument, which was the focus of those issues, we quoted the district attorney's statements. And, in fact, even the court of appeal agreed that the district attorney's statements were unwarranted given the facts, but simply decided that they were not prejudicial. Okay. You run over. We'll give you a minute. Oh, sorry.  I want to make sure that this is correct. Hernandez's prior strikes were all for first-degree burglary, correct? That's right. He had two burglary convictions. Those were his prior strikes. The most serious crime he ever committed, though it's not a strike, was an ex-felon in possession, but it didn't involve any injury. It didn't involve the use. It's simply that he got into a disagreement with a gang tagger, and there was a gun involved, so he was arrested for felon in possession. And by first-degree burglary, I mean a 459 residential. That's right, 459 residential. No people were involved. They were all, at the time, not the residents weren't there. Okay. Thank you. I may please the Court. I was prepared to speak only to the certified issues, Your Honor. My understanding under 28 U.S.C. 2253C that the Court of Appeals does not have jurisdiction to entertain the equivalent unusual punishment argument without a certificate. I think the rule, and I don't know whether or not the rule is a substitute for a motion to expand the certificate, but the rule, I think, provides that we get an opportunity, if a certificate is granted, to brief and argue at that point. Yes. And sometimes the practice is that someone in your position will brief it as a sort of a belt and suspenders, and sometimes not. I confess I don't have your brief here in front of me. Did you brief it? No, I did not brief it, Your Honor. Okay. Before we would grant, and certainly before we would rule on the merits, we would give you a chance to brief that on the merits. On the prosecutorial misconduct. Oh, I'm sorry. Could you please identify yourself for the record? I missed that. Yes. My name is Donald T. Nicola. I'm a Deputy Attorney General for the State of California. On the question of the prosecutorial misconduct, which is reviewed under the AEDPA standard, our argument, I think, is simple. I think it is true that the prosecutor was incorrect in saying that one of the witnesses had identified a red and white vehicle that would be ascribable to the city. But his argument was literally and explicitly based on what he said the witness had testified to. So the jury would have known from its own view of the testimony that that argument was incorrect. It wasn't situational. The prosecutor was purporting to allude to matters outside the record. He was explicitly directing the jury's focus on what he said the witness had testified to in court. He happens to have been wrong. Yeah. But you're saying the jury would have known. Well, maybe the jury would have and maybe not. Yes. If they remembered accurately what had been said, fine. But as I recollect, the prosecutor said it several times. Yes. I think the prosecutor said it three times. Yeah. The other thing, the other reason why we would argue that under the AEDPA standard, the State Court of Appeal resolution of the case was reasonable, was that it is supported by the notion that the Supreme Court and the circuit ascribes to, which is that you can presume that the jury will abide by their instructions and they are instructed to consider only the evidence that's received and not the argument of counsel. So certainly within the context of the AEDPA review standard, that legal recognition and that presumption that the jury will abide by their instructions serves itself, I think, as a reasonable basis for the Court of Appeal's decision that makes it, I think, immune from attack under the AEDPA. That would be our main argument on that point, plus the arguments that we made in the brief, which include also the point that the evidence of his guilt was strong and we think the evidence of his innocence was rather implausible. But our main point on the AEDPA standard is that this adjudication cannot be condemned as objectively unreasonable under any U.S. Supreme Court case because irrespective of whether or not the prosecutor erred, the error, the misstatement was such that it involved evidence that was before the jury or it involved a dispute about what was before the jury and most significantly, the Supreme Court case law and the Ninth Circuit case law says you can presume the jury followed the instructions and it's not unreasonable for the California's it would not have been unreasonable for the California Court of Appeal to resolve the case on that basis. I don't wish either to alarm or to mislead you by this question because if we do get this far, you certainly will have a chance to brief and so on. Is it true that this crime of possession would not today be charged in L.A. County as a third strike? That's my understanding. I think under the current district attorney's policies, I think the new crime would be he would charge the new crime as a third strike if it itself would have qualified as a serious or violent strike in the first place and this crime would not have in other words, if he had had three possession offenses of this type I don't think they would have been serious and violent crimes so I think it's true. The short answer I think is yes, it would not have been charged that way today. Even if the two priors were serious and violent, the third if it was possession of this kind, that would not have been charged as a third strike? Yes, that's what I'm saying. The current policy of this district attorney is that it wouldn't be charged because it wouldn't itself qualify as a strike. Okay. So I think that's true. Okay. Nothing further unless and until the court certifies the issue then I'm happy to move the issue. Thank you. Thank you. Would you like a minute? On the issue of the district attorney's misconduct as our brief shows, it's not just the repeated false statements it's also a combination of that with ineffective assistance of counsel that is also a brief issue and I think it's important to take that into consideration given that Mr. Hernandez is spending the rest of his life in prison those factors obviously have to be elevated with respect to both the district attorney's conduct and the defense counsel's defense of the matter. Again, I urge this court to consider Solem and the Banyard case. I believe that given this is a clearly incorrect application of Supreme Court precedent especially on the proportionality issue especially given that Mr. Hernandez would be out of jail right now but for the circumstances of timing and nothing less. I appreciate the time. Thank you very much. Thank you. We thank both counsel. The case of Hernandez v. Almeida is now submitted for decision. If we want more briefing, we will, of course, by order, ask for it. The next case on the argument counsel
judges: T.G. Nelson, W. Fletcher, Bea